UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                             )<br>)<br>JUNIOR MELENDEZ                      )   Criminal Action No. 19-cr-40025-TSH<br>JUAN RODRIQUEZ                        )<br>KEVIN JEAN                                )<br>ANGEL CORDOVA                       )<br>ANTOINE MACK                          )<br>                                                     )<br>        Defendants                           ) | |

**FINDING AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Facebook) AND MOTION FOR FRANKS HEARING (Document #191)**

**March 30, 2021**

## Introduction

The Defendant, Junior Melendez has moved to suppress from the introduction into evidence against him at trial his Facebook records. He assigns as reason for suppression that the affidavit in support of the warrant to search his Facebook account is based on misrepresentations and material omissions by the affiant and he request a *Franks* Hearing. He further argues that the affiant made conclusory statements without specific and arguable facts of ongoing criminal activity, there is no showing that the informants mentioned in the affidavit were reliable, the information in the warrant was stale, and the training and experience of the affiant was not a substitute for actual evidence of wrongdoing. For the reasons set forth below the Motion is **denied.**

**Background**

Beginning in July 2018, Worcester Police and the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), began investigating the Defendant Junior Melendez and his associates for drug and firearm violations. On September 27, 2018 Special Agent Anthony Ventetuolo submitted an application for a warrant to search Mr. Melendez' Facebook account. In that affidavit Agent Ventetuolo recounts Mr. Melendez' criminal history from 1994 until 2014 citing multiple convictions for narcotic and firearms offenses, including a 1999 conviction in Massachusetts Federal Court for possession with intent to distribute cocaine and possession of a firearm for which he was sentenced to 109 months of incarceration.

In furtherance of the investigation and as related in the search warrant affidavit, the police cultivated two confidential sources ("CS-1" and "CS-2"). CS-1 was credited with telling the authorities that Melendez is the Massachusetts leader of the Almighty Vice Lords, a violent street gang with direct connection to National Vice Lords leadership, and that he directs Vice Lords operation in Worcester, Gardner, and Fitchburg. CS-1 explained that Melendez provides firearms to other gang members and he has gone to New Hampshire to obtain guns from a "white female" and that he also has a firearm source in Boston. CS-1 has seen Melendez possess and/or distribute approximately 35 firearms to other Vice Lords. Significantly, CS-1 confirmed that Melendez uses his Facebook account to communicate with younger Vice Lord members about gang business, including firearms and narcotic transactions.

CS-2 also provided significant identification and personal information to the affiant. He confirmed that Melendez is the leader of the Massachusetts Vice Lords and that he provided kilogram quantities of powder and crack cocaine for distribution in Athol, Winchendon, and Franklin County. CS-2 has personally seen Melendez converting powder cocaine into crack

cocaine and represented that Melendez and other Vice Lord members have access to, and generally carry firearms. CS-2 also confirmed that Melendez and his associates use Facebook together with their cellphones and a special email account to communicate about Vice Lord gang related business.

The authorities obtained a court authorized pen register and trap and trace device which revealed active communications between Melendez and at least 11 Vice Lord gang members through Facebook. Of the eleven, two co-Defendants (Juan Rodriguez and Antoine Mack) had been arrested 4 days before the affidavit authored by Agent Ventetuolo. Those arrests were for an incident involving a firearm purchased by a straw buyer.

## Discussion

An application for a search warrant must establish probable cause to believe: (1) crime has been committed, (the "commission" element), and (2) that enumerated evidence of the offense will be found at the place of the search (the so called "nexus" element). *United States v. Zayos-Viaz* 95 F.3d 105, 111 (1st Cir. 1996). The task of the issuing magistrate in determining whether probable cause exists is "to make a practical, common-sense decision whether given all circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Feliz* 182 F.3d 82, 86 (1st Cir. 1999) quoting from *Illinois v. Gates* 462 U.S. 213, 238 (1983).

Melendez attacks the affidavit in piece-meal fashion trying to discredit each observation as individually insufficient to establish probable cause. However, this court must consider "the totality of the circumstances in determining whether the affidavit demonstrates probable cause to search." *United States v. Tiem Trinh* 665 F.3d 1, 10 (1st Cir. 2011). In this case the affidavit provides more than sufficient probable cause to believe that the Facebook account would contain

evidence of criminal activity. Both confidential sources provided material information that was based in part on first-hand knowledge. *United v. Taviano*, 899 F.2nd 99, 102 (1st Cir. 1999). These included descriptions of the various types of firearms personally seen, including CS-2 having personally observed Melendez in possession of a 9mm firearm, and the names of firearm sources supplying Melendez and his associates.

Investigators were also able to corroborate much of the information that the confidential sources provided, including CS-2's information that a female from New Salem was a supplier of firearms for Melendez and associates, identifying a Hartford gang member through a photo array, and information regarding the shooting up of a residence in Winchendon by "Sway" one of Melendez' fellow Vice Lord members, and a co-conspirator in a companion case (Docket # 19-40024). I also find it significant that the pen register and trap and trace interceptions demonstrated active, ongoing communications between Melendez and fellow Vice Lord members.

With regard for the Defendant's request for a *Franks* hearing to challenge statements made by Agent Ventetuolo in the search warrant affidavit, he is required to establish (1) "that the affiant in fact made false statements knowingly or intentionally, or with reckless disregard for the truth, (2) make that showing by a preponderance of the evidence, and (3) show in addition that with the affidavit's false material to one-side, the affidavit remaining content is insufficient to establish probable cause." *Frank v. Delaware* 438 U.S. 154, 156 (1978). "Mere inaccuracy, even negligent ones are not enough to warrant a *Franks* Hearing." *United States v. Santana* 342 F.3d 60, 66 (1st Cir. 2003). Further, if any false statements or omissions are material the relevant inquiry is "even with false facts stripped away inaccurate facts corrected, and omitted facts

included, the affidavit remains sufficient to accept probable cause." *United States v. Barbosa*, 2016 WL 6609174 (2016).

Melendez argues that Agent Ventetuolo relied too heavily on Worcester Police Department intelligence that Melendez was a member and leader of the Vice Lords. He also points to an incident where Sergeant Roche of the Worcester Police Gang Unit interrogated Melendez on June 5, 2019, and allegedly stated to him "I never caught you with a gun, I never seen you with a gun." The Defendant argues that the forementioned information should have been known by the affiant and included in the affidavit. Since this comment was allegedly made by Sergeant Roche six months after this warrant was issued, I choose not to consider it.

Melendez was identified by CS-1 and CS-2 as a local leader of the Vice Lords having direct connections to National Vice Lords leadership. He frequently traveled to National Vice Lord meetings he provided direction to Vice Lord members in Boston, Worcester, and Springfield, and he had to approve any major criminal activity. This information confirms the Worcester Police intelligence and does not implicate *Franks* issues.

Mr. Melendez also submitted an affidavit from a private investigator who spoke with an individual whom the Defendant believes to be CS-2. That person informed the investigator that contrary to statements attributed to CS-2 in the affidavit that he/she had never seen Melendez in possession of a firearm and controlled substance. While it is reasonable to assume that *if* the investigator did speak with CS-2 that that person would be more than a little reluctant to verify statements establishing him/her as an informant. Additionally, the Ventetuolo affidavit credits CS-2 with stating that he/she was at Melendez' residence on one occasion when Melendez converted powder cocaine into crack cocaine before giving it to co-Defendant Rodriguez. CS-2

also stated that he/she had seen Melendez carrying a 9 mm firearm with black frame and chrome top.

That investigator also provided information about Mr. Melendez' business doing night club promotions. Melendez argues that that promotional business explains that his Facebook use was not nefarious and that Agent Ventetuolo misled the court by omitting a description of his work as an agent for the club and attributing his Facebook activity only to gang activity. Quite simply, these allegations contradict statements by CS-1 and CS-2 and the trap and trace and pen register information and do not warrant a *Franks* hearing.

## Conclusion

For the reasons set forth above, the Defendant's Motion to Suppress his Facebook records is **denied**.

/s/ Timothy S. Hillman
Timothy S. Hillman
District Judge