**United States District Court**
**District of Massachusetts**

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) **Criminal Action No. 19-cr-40025-TSH** |
| **JUNIOR MELENDEZ** | ) |
| | ) |
| | ) |
| **Defendant** | ) |

_____

**FINDINGS AND ORDER ON DEFENENT JUNIOR MELENDEZ' MOTION TO**
**SUPPRESS SEARCH OF 26 MALVERN ROAD (Document # 206)**

**May 13, 2021**

**Introduction**

The defendant Junior Melendez moves to suppress from the introduction into evidence

against him at trial the results of a warranted search of premises located at 26 Malvern Road,

apartment 3, in Worcester.  He assigns as reasons for the suppression that the affidavit in support

of the search warrant failed to establish probable cause that he was engaged in criminal activity

and/or that evidence of criminal activity would be found in the premises, and that the information in the affidavit in support of the warrant was stale.   For the reasons set forth below that motion is denied.

### Background

In July of 2018, Worcester police and the ATF and DEA began investigating the defendant Junior Melendez and his associates for drug and firearm offenses.   Mr. Melendez was known to the police after having been convicted of similar offenses in 2006, and for which he served a lengthy (109 month) sentence.   Mr. Melendez was identified by the police as the leader of the Massachusetts chapter of the Almighty Vice Lords, a violent street gang.   In December of 2018, the authorities installed a pole camera in front on 26 Malvern Street.  On April 4, 2019, April 10, 2019, and on May 16, 2019, additional pole cameras were installed in front of residential premises at Cutler Street and Grafton Street in Worcester, and at Hartford Turnpike in Shrewsbury respectively.

In March of 2019 the government obtained authorization to intercept wire and electronic communications from  Mr Melendez' cell phone.   On April 12, 2019, the police obtained a warrant for the location information for that phone. On April 22, 2019, based upon the information received from the wiretap, the phone location warrant, and pole cameras, agents applied for, and received a warrant authorizing GPS tracking on a Jaguar SUV that Mr. Melendez was using.  On May 31, 2019, agents applied for, and received a search warrant authorizing GPS tracking on a black Mercedes C300.  On June 4, 2019 contemporaneous with the arrests of Mr. Melendez and his co-conspirators, ATF Special Agent Ventetuolo applied for and received search warrants for several residential addresses including 26 Malvern Road.

In his affidavit in support of that warrant Agent Venteuolo recounts that on April 2, 2019, an individual known as Lujan Burgos texted Melendez that he was " . . . at the spot." 45 minutes later pole cameras observed Burgos park in front of the Malvern Road address, wait near the front entrance, and then call Melendez to tell him that the front door was locked.  Thereafter Melendez joined Burgos and escorted him into the residence.  Burgos remained for approximately 30 minutes and drove away.  He was stopped by the police after leaving, arrested for a motor vehicle offense, and 23 grams of crack was found in his pocket.

On April 3rd, 2019 surveillance and intercepted telephone calls established probable cause to believe that Melendez directed co-defendant Kevin Mack to deliver cocaine to co-defendant Richards at the Malvern Road property.   In exchange for the drugs, Mack received a large sum of money which he posed with in an Instagram post.  Later that day Mack delivered the proceeds to Melendez at 26 Malvern Road.

On May 17th 2019, co-defendant Angel Cordova called Melendez and told him that he "had 531 in one piece" and "does not want to break it."  Melendez agreed to "take it all."  Later that same day agents observed Cordova and Melendez parked in their respective vehicles in front of 26 Malvern Road.   Melendez and an individual named Mike Sweeney exited Melendez' Jaguar, and met with Cordova on the street before going into the premises and Cordova exited a short time later.   Agent Ventetuolo opined that Melendez and Cordova met at the Malvern Road property in order for Melendez to purchase 531 grams of cocaine from Cordova.

On May 20th 2019 an individual named Adam Harney called Melendez and stated "I'm trying to see you" and "I got two on me so..."  Melendez and Harney agreed to meet and Melendez directed Harney to 26 Malvern Road where he was observed exiting his vehicle, entering  26 Malvern Road and exiting approximately six minutes later.

**Discussion**

An application for a search warrant must establish a probable cause to believe; (1) a crime has been committed, (the "commission" element), and (2) enumerated evidence of the offense will be found at the place to be searched. The so-called "nexus" element. The *United States v. Zayas-Diaz* 95 F.3d 105, 111 (1st Cir. 1996). With regard to the nexus element, the task of a magistrate judge in determining whether probable cause exists is "to make a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Feliz* 182, F.3d 82, 86 (1st Cir. 1999). Quoting from *Illinois v. Gates* 462 U.S. 213. 238 (1983). Here, there are four specific instances between April and late May 2019 which implicate Malvern Road as premises where it was reasonable to assume that evidence of drug dealing would be found. The issuing magistrate judge had more than sufficient probable cause to believe that evidence of drug trafficking would be found at 26 Malvern Road.

The defendant argues that the information in the affidavit was stale, particularly since Melendez had moved out of the premises after breaking up with his girlfriend on April 19th. This argument is without merit since Melendez sold cocaine to Adam Harney two weeks before the search warrant was issued and regularly visited the property after April 19th. "[I]t is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other context, be regarded as stale." *United States v. Zayas-Deaz*, 95 F.3rd 105, 116 (1st Cir. 1996); *United States v. Nocella*, 849 F.2nd 33, 40 (1st Cir. 1988) ("By its very nature , drug trafficking, if unchecked, is apt to persist over relatively long periods of time.").

The Government also argues that the good faith exception should apply here. *United States v. Leon,* 468 U.S. 897 (1984). The good faith exception provides that even if a search warrant is

flawed, the evidence should not be suppressed where "the police act with an objectively reasonable good faith belief that their conduct is lawful." *Davis v. U.S.* 131 Sup. Ct. 2419, 2422 (2011).  The good faith exception would not apply if the affiant misled the magistrate, or demonstrated a reckless disregard for the truth, or the magistrate wholly abandoned his judicial duty, or probable cause is so lacking that belief that probable cause did exist is "entirely unreasonable," *Leon Supra* at 923.  I find that none of those four conditions exist; namely there is no misleading information in the affidavit and that the good faith exception applies.

### Conclusion

For the reasons set forth above, the Defendant's Motion to Suppress the search of 26 Malvern Road is **denied.**

/s/Timothy S. Hillman
Timothy S. Hillman
District Judge