United States District Court
District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 19-cr-40025-TSH |
| JUNIOR MELENDEZ | ) |
| | ) |
| | ) |
| Defendant | ) |

**FINDINGS AND ORDER ON DEFENANT JUNIOR MELENDEZ' MOTION TO SUPPRESS SEARCH OF 151 HARTFORD ROAD, SHREWSBURY, MA (Document # 210)**

May 13, 2021

**Introduction**

The defendant Junior Melendez moves to suppress from the introduction into evidence against him at trial the results of a warranted search of a trailer located at 151 Hartford Road in Shrewsbury. He assigns as reasons for the suppression that the affidavit in support of the search warrant failed to establish probable cause that he was engaged in criminal activity and/or that

evidence of criminal activity would be found in the premises, and that the affiant made omissions with reckless disregard for the truth.   For the reasons set forth below that motion is denied.

## Background

In July of 2018, Worcester police and the ATF and DEA began investigating the defendant Junior Melendez and his associates for drug and firearm offenses.   Mr. Melendez was known to the police after having been convicted of similar offenses in 2006, and for which he served a lengthy (109 month) sentence.   Mr. Melendez was identified by the police as the leader of the Massachusetts chapter of the Almighty Vice Lords, a violent street gang.   In September of 2018 the authorities obtained a warrant to search Mr. Melendez' Facebook records.   In December of 2018, the authorities installed a pole camera in front on 26 Malvern Street.   On April 4, 2019, April 10, 2019, and May 16, 2019, additional pole cameras were installed in front of residential premises at Cutler Street and Grafton Street in Worcester, and at the subject premises.

In March of 2019 the government obtained authorization to intercept wire and electronic communications from Mr. Melendez' cell phone.   On April 12, 2019, the police obtained a warrant for the location information for that phone. On April 22, 2019, based upon the information received from the wiretap, the phone location warrant, and pole cameras agents applied for, and received a warrant authorizing GPS tracking on a Jaguar SUV that Mr. Melendez was driving.   On May 31, 2019, agents applied for, and received a search warrant authorizing GPS tracking on a black Mercedes C300 that Melendez was using.   On June 4, 2019 contemporaneous with the arrests of Mr. Melendez and his co-conspirators, ATF Special Agent Ventetuolo applied for and received search warrants for several residential addresses including

the subject trailer located at 151 Hartford Turnpike.  The Ventetuolo affidavit is built upon the details from the above investigative measures.

Registry of Motor Vehicle records, intercepted communications, and surveillance led investigators to believe that Melendez owned the trailer located in Lot 4, 151 Hartford Turnpike in Shrewsbury.  Until mid-May 2019, Melendez rented the property to a couple but evicted them so that he could reside there.  On May 18, 2019, Melendez called several friends to enlist them to help him move into the trailer.  Later that day agents in Providence Rhode Island observed Melendez load his Jaguar SUV and a rented U-Haul box truck with personal belongings and transport them to the Turnpike Road address where the unloading was observed via the pole camera.  While in Providence, Melendez called an unknown individual known as "Max" and told Max that he was moving to Shrewsbury and would be arriving at Max's place that afternoon to retrieve a personal item.  Max told Melendez that "that tool you left there, it's at the shop.  I had to take it out of there."  Melendez instructed Max to bring that item to the Providence apartment.  Agent Ventetuolo opined in the affidavit that that conversation concerned a firearm that Melendez stored in his Providence apartment that he brought with him to the Shrewsbury address.

On May 19, 2019, an individual named Jack Sweeney called Melendez to discuss an issue possible hide in the Shrewsbury property. Sweeney told Melendez that "when we took out the shoes the other day, it was up in the air, so someone got in there."  Melendez responded that the third party "did not know about the spot."  Sweeney reiterated that "the thing was up in the air" and that "they pushed it down a little, it wasn't stepped right like usual, the seams were open, not pulled back."  Agent Ventetuolo opined that they were talking about a hide for guns; i.e., "shoes."

On May 24, 2019 at 6:05 p.m. co-Defendant Angel Cordova called Melendez and Melendez asked Cordova if it was the "same" or "different" and Cordova replied that it was a little "different." Melendez asked Cordova for "two and a half" and then "three" and they agreed to meet the next day. The next day Cordova called Melendez and asked where they were meeting and Melendez texted Cordova the 151 Hartford Turnpike address. At 2:51 p.m. agents observed Cordova's automobile traveling on Hartford Turnpike towards Melendez' trailer. One minute later via pole camera they observed Cordova's arrive at the premises, exit his car, and enter the premises with a black bag over his shoulder. At 3:10 p.m. Cordova exited the premises, returned to his car and retrieved something from the front seat and reenter the premises. While Melendez and Cordova were in the premises, co-Defendant Richards called Melendez and asked where he was and Melendez told him he was at "the trailer."

Cordova left the trailer and drove away at 3:47. Eight minute later Melendez left the premises in his car. Richards arrived at 4:17 and exited his car carrying a white bag. Three minutes later Melendez returned and the two men entered the trailer and Richards exited at 4:38 with the white bag. Richards was stopped by police in New Hampshire an hour later and large amounts of cocaine and crack cocaine was seized. It was Agent Ventetuolo's opinion that Cordova sold cocaine and cocaine base to Melendez at the subject property, who in turn sold it to Richards at the subject property the same day.

. **Discussion**

An application for a search warrant must establish a probable cause to believe; (1) a crime has been committed, (the "commission" element), and (2) that enumerated evidence of the offense

will be found at the place to be searched, the so-called "nexus" element, *United States v. Zayas-Diaz* 95 F.3d 105, 111 (1st Cir. 1996). With regard to the nexus element, the task of a magistrate judge in determining whether probable cause exists is "to make a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Feliz* 182, F.3d 82, 86 (1st Cir. 1999). Quoting from *Illinois v. Gates* 462 U.S. 213. 238 (1983). Here, the affidavit contains detailed instances in May 2019 which provided more than ample probable cause for the issuing magistrate judge to conclude that evidence of drug dealing and firearms would be found at 151 Hartford Turnpike.

Melendez also argues that Agent Ventetuolo relied too heavily on Worcester Police Department intelligence in seeking to establish Melendez' credentials as a leader of the Almighty Vice Lords. In support of that argument he alleges that Sergeant Roche of the Worcester Police Gang Unit allegedly stated to Melendez on June 5, 2019 that "I never caught you with a gun, I never seen you with a gun." The Defendant argues that "[D]ue to the heavy reliance on the Worcester Police in regard to this investigation, the aforesaid information would have been known by the affiant and [should have been] included in the affidavit" in mitigation. Since that statement was made on June 5, 2019, one day after the affidavit at issue in this case it could not have been used by Agent Ventetuolo.

The Government also argues that the good faith exception should apply here. *United States v. Leon,* 468 U.S. 897 (1984). The good faith exception provides that even if a search warrant is flawed, the evidence should not be suppressed where "the police act with an objectively reasonable good faith belief that their conduct is lawful." *Davis v. U.S.* 131 Sup. Ct. 2419, 2422 (2011). The good faith exception would not apply if the affiant misled the

magistrate, or demonstrated a reckless disregard for the truth, or the magistrate wholly abandoned his judicial duty, or probable cause is so lacking that belief that probable cause did exist is "entirely unreasonable," *Leon Supra* at 923.  I find that none of those four conditions exist; namely there is no misleading information in the affidavit and that the good faith exception applies.

## Conclusion

For the reasons set forth above, the Defendant's Motion to Suppress the search of the trailer at 151 Hartford Turnpike, Shrewsbury is **denied.**

/s/Timothy S. Hillman
Timothy S. Hillman
District Judge